# Exhibit A



## Billybey Marina Services, LLC

**Invoice#04-01-2020-6**
**Ref:** B. No. 250
(April 2020)
**Location:** SBMT

**Client:**

B. No. 250 Corp.
58 South Service Road
Melville, NY 11747

Bouchard Transportation Co. Inc.
2100 Frankfurst Avenue
Baltimore, MD 21226

**Location:**

South Brooklyn Marine Terminal – West Face

**Details:**

- One (1) DS250 Barge 317' long for thirty (30) days for April 2020……..…...........….…..$19,194.00
- Tug, Ellen S. Bouchard, 112 Ft. for thirty (30) days for April 2020……………...……….$7,392.00
- Tug, Evening Star, 112 Ft. for thirty (30) days for April 2020……….…………....…….$7,392.00

Tax: **N/A**

Total Charge(s): **$33,978.00**

**Additional Notes:**

**Please Remit Payment to**:
Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, NJ 07086
Attention: Tina Hannigan
**Wire instructions to Billybey Marina Services, LLC**
Investors Bank
ABA # 221272031
Acct. Name # Billybey Marina Services, LLC
Account # 1001008892
Bank Address:  Short Hills, NJ

**Corporate Office**: 4800 Avenue at Port Imperial Weehawken, NJ 07086
www.docknyc.com

IN WITNESS WHEREOF, the parties have executed this Berthing Location Permit as of the ____ day of ____, _____.

**PERMITTOR:**

**BILLYBEY MARINA SERVICES, LLC**

By: _____

Name: Donald J. Liloia

Title: S. Vice President

Date: 4/16/2020

**PERMITTEE:**

**BOUCHARD TRANSPORTATION**

By: _____

Name: Jim Slpan

Title: Operator

Date: 4/10/2020

INITIAL

B250
+ SBART
TUGS

## SCHEDULE A

**PERMITTEE:**

> B. No. 250 Corp.
> 58 South Service Road
> Melville, NY 11747

> Bouchard Transportation Co. Inc.
> 2100 Frankfurst Avenue
> Baltimore, MD 21226

**VESSEL(S):**

> B. No. 250 – 317 Ft.

**TUGS:**
> Ellen S. Bouchard – 112 Ft.
> Evening Star – 112 Ft.

**FACILITY:**

> South Brooklyn Marine Terminal – West Face

**BERTH AREA:**

> *(See Schedule E)*

**BERTHING PERIOD:**
| | |
|---|---|
| Commencement Time: | April 1, 2020 |
| Expiration Time : | April 30, 2020 |

**USE:**
| | |
|---|---|
| Berthing Only    (yes/no) | YES |
| Passenger Boarding (yes/no) | NO |
| Vessel Servicing (yes/no) | NO |
| Public Access    (yes/no) | NO |

**PERMIT FEE:**     $33,978.00

> **Barge:** $639.80 per day for thirty (30) days for a total of **$19,194.00**

> **Tug:** $2.20 per day for thirty (30) days for a total of **$14,784.00**

> > Ellen S. Bouchard: $7,392.00
> > Evening Star: $7,392.00

8

INITIAL



## Billybey Marina Services, LLC

**Invoice#03-04-2020**
**Ref:** B. No. 250
(March 2020)
**Location:** SBMT

**Client:**

B. No. 250 Corp.
58 South Service Road
Melville, NY 11747

Bouchard Transportation Co. Inc.
2100 Frankfurst Avenue
Baltimore, MD 21226

**Location:**

South Brooklyn Marine Terminal – West Face

**Details:**

- One (1) DS250 Barge 317' long for thirty-one (31) days for March 2020……...……..$19,833.80
- Tug, Ellen S. Bouchard, 112 Ft. for thirty one (31) days for March  2020……...……..$7,638.40
- Tug, Evening Star, 112 Ft. for thirty-one (31) days for March 2020……………....……..$7,638.40

Tax: **N/A**

Total Charge(s): **$35,110.60**

**Additional Notes:**

**Please Remit Payment to:**
Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, NJ 07086
Attention: Tina Hannigan
**Wire instructions to Billybey Marina Services, LLC**
Investors Bank
ABA # 221272031
Acct. Name # Billybey Marina Services, LLC
Account # 1001008892
Bank Address:  Short Hills, NJ

**Corporate Office:** 4800 Avenue at Port Imperial Weehawken, NJ 07086
www.docknyc.com



# DOCKNYC
## Billybey Marina Services, LLC

**Invoice#02-28-2020**
**Ref:** B. No. 250
(March 2020)
**Location:** SBMT

**Client:**

B. No. 250 Corp.
58 South Service Road
Melville, NY 11747

Bouchard Transportation Co. Inc.
2100 Frankfurst Avenue
Baltimore, MD 21226

**Location:**

South Brooklyn Marine Terminal – West Face

**Details:**

- One (1) DS250 Barge 317' long for thirty-one (31) days for March 2020……..…….…\$19,833.80
- Tug, Ellen S. Bouchard, 112 Ft. for thirty-one (31) days for March  2020……..…….…\$7,638.40
- Tug, Evening Star, 112 Ft. for thirty-one (31) days for March 2020………………...…….\$7,638.40
- ~~Tug, Frederick E. Bouchard 130 Ft. for thirty-one (31) days for March 2020………….\$8,866.00~~

Tax: **N/A**

Total Charge(s): **\$43,976.60**

**Additional Notes:**

**Please Remit Payment to**:
Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, NJ 07086
Attention: Tina Hannigan
**Wire instructions to Billybey Marina Services, LLC**
Investors Bank
ABA # 221272031
Acct. Name # Billybey Marina Services, LLC
Account # 1001008892
Bank Address:  Short Hills, NJ

**Corporate Office**: 4800 Avenue at Port Imperial Weehawken, NJ 07086
www.docknyc.com

# 250 — SBmT

IN WITNESS WHEREOF, the parties have executed this Berthing Location Permit as of the _2nd_ day of _Mar. 2020_ .

**PERMITTOR:**

**BILLYBEY MARINA SERVICES, LLC**

By: _Donald J. Liloia_
    Name: _Donald J. Liloia_
    Title: _Sr. Vice President_
    Date: _3/3/2020_

**PERMITTEE:**

**BOUCHARD TRANSPORTATION**

By: _____
    Name: _Jim Sloan_
    Title: _Dispatcher_
    Date: _3/2/25_

7

INITIAL

**SCHEDULE A**

**PERMITTEE:**

      B. No. 250 Corp.
      58 South Service Road
      Melville, NY 11747

      Bouchard Transportation Co. Inc.
      2100 Frankfurst Avenue
      Baltimore, MD 21226

**VESSEL(S):**

      B. No. 250 – 317 Ft.

**TUGS:**

      Ellen S. Bouchard – 112 Ft.
      Evening Star – 112 Ft.

**FACILITY:**

      South Brooklyn Marine Terminal – West Face

**BERTH AREA:**

      *(See Schedule E)*

**BERTHING PERIOD:**

| | |
|---|---|
| Commencement Time: | March 1, 2020 |
| Expiration Time : | March 31, 2020 |

**USE:**

| | |
|---|---|
| Berthing Only    (yes/no) | YES |
| Passenger Boarding (yes/no) | NO |
| Vessel Servicing (yes/no) | NO |
| Public Access    (yes/no) | NO |

**PERMIT FEE:**     <u>**$35,110.60**</u>

    **Barge:** $639.80 per day for thirty-one (31) days for a total of <u>**$19,833.80**</u>

    **Tug:** $2.20 per day for thirty-one (31) days for a total of <u>**$15,276.80**</u>

        Ellen S. Bouchard: $7,638.40
        Evening Star:  $7,638.40

8

<u>**INITIAL**</u>

SCHEDULE A

**PERMITTEE:**

> B. No. 250 Corp.
> 58 South Service Road
> Melville, NY 11747
>
> Bouchard Transportation Co., Inc.
> 2100 Frankfurst Avenue
> Baltimore, MD 21226

**VESSEL(S):**

> B. No. 250 – 317 Ft.

**TUGS:**

> Ellen S. Bouchard – 112 Ft.
> Evening Star – 112 Ft.
> Frederick E. Bouchard - 130 Ft.

**FACILITY:**

> South Brooklyn Marine Terminal – West Face

**BERTH AREA:**

> *(See Schedule E)*

**BERTHING PERIOD:**

> Commencement Time:        March 1, 2020
> Expiration Time:              March 31, 2020

**USE:**

> Berthing Only    (yes/no)        YES
> Passenger Boarding (yes/no)      NO
> Vessel Servicing (yes/no)        NO
> Public Access    (yes/no)        NO

**PERMIT FEE:**        $43,976.60

> Barge: $639.80 per day for thirty-one (31) days for a total of $19,833.80
>
> Tug: $2.20 per day for thirty-one (31) days for a total of $24,142.80
>
> > Ellen S. Bouchard: $7,638.40
> > Evening Star:  $7,638.40
> > Frederick E. Bouchard: $8,866.00

8


INITIAL



# Billybey Marina Services, LLC

**Revised Invoice#03-04-2020**
**Ref:** B. No. 250
(2/15/2020 – 2/29/2020)
**Location:** SBMT

## Client:

B. No. 250 Corp.
58 South Service Road
Melville, NY 11747

Bouchard Transportation Co. Inc.
2100 Frankfurst Avenue
Baltimore, MD 21226

## Location:

South Brooklyn Marine Terminal – West Face

## Details:

- One (1) DS250 Barge 317′ long for fifteen (15) days for Saturday, February 15, 2020 to Saturday, February 29, 2020…………………………………..…………………………..$9,597.00
- Tug, Ellen S. Bouchard, 112 Ft. for fifteen (15) days for Saturday, February, 15, 2020 to Saturday, February 29, 2020…………………………………………………………….$3,696.00
- Tug, Evening Star, 112 Ft. for fifteen (15) days for Saturday, February, 15, 2020 to Saturday, February 29, 2020……………………………………………………………..…..…$3,696.00
- Tug, Frederick E. Bouchard 130 Ft. for five (5) days for Saturday, February, 15, 2020 to Wednesday, February 19, 2020………………………………………………....………$1,430.00

Tax: **N/A**

Total Charge(s): **$18,419.00**

## Additional Notes:

**Please Remit Payment to**:
Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, NJ 07086
Attention: Tina Hannigan
**Wire instructions to Billybey Marina Services, LLC**
Investors Bank
ABA # 221272031
Acct. Name # Billybey Marina Services, LLC
Account # 1001008892
Bank Address:  Short Hills, NJ

**Corporate Office**: 4800 Avenue at Port Imperial Weehawken, NJ 07086
www.docknyc.com



# Billybey Marina Services, LLC

**Invoice#02-14-2020-1**
**Ref:** B. No. 250
(2/15/2020 – 2/29/2020)
**Location:** SBMT

**Client:**

B. No. 250 Corp.
58 South Service Road
Melville, NY 11747

Bouchard Transportation Co. Inc.
2100 Frankfurst Avenue
Baltimore, MD 21226

*Revised*

**Location:**

South Brooklyn Marine Terminal – West Face

**Details:**

- One (1) DS250 Barge 317′ long for fifteen (15) days for Saturday, February 15, 2020 to Saturday, February 29, 2020……………………………..…...……………………..$9,597.00
- Tug, Ellen S. Bouchard, 112 Ft. for fifteen (15) days for Saturday, February, 15, 2020 to Saturday, February 29, 2020……………………………………………………….$3,696.00
- Tug, Evening Star, 112 Ft. for fifteen (15) days for Saturday, February, 15, 2020 to Saturday, February 29, 2020………………………………………………………...…$3,696.00
- Tug, Frederick E. Bouchard 130 Ft. for fifteen (15) days for Saturday, February, 15, 2020 to Saturday, February 29, 2020………………………………………………………$4,290.00

Tax: **N/A**

Total Charge(s): **$21,279.00**

**Additional Notes:**

**Please Remit Payment to:**
Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, NJ 07086
Attention: Tina Hannigan
**Wire instructions to Billybey Marina Services, LLC**
Investors Bank
ABA # 221272031
Acct. Name # Billybey Marina Services, LLC
Account # 1001008892
Bank Address:  Short Hills, NJ

**Corporate Office**: 4800 Avenue at Port Imperial Weehawken, NJ 07086
www.docknyc.com

## BERTHING LOCATION PERMIT

This Berthing Location Permit ("Permit"), dated as of the date set forth on the signature page hereto is between **BILLYBEY MARINA SERVICES, LLC** ("Permittor") and the permittee identified on the signature page hereto ("Permittee").

Permittor is under contract to the New York City Economic Development Corporation ("EDC") as the duly appointed operator of the facility identified on the Schedule A annexed hereto (the "Facility") and is contracted to authorize vessel operators to berth vessels at the Facility in accordance with the rules and regulations established in this Permit.

Permittee has requested a permit to berth the vessel identified on Schedule A (the "Vessel") at the Facility location referred to on Schedule A (the "Berth Area") for the period and use identified on Schedule A.  The Permittor and Permittee hereby agree to the terms and conditions set forth below:

1.      **Authorization**.          Permittor hereby grants to the Permittee the right to use the Berth Area to berth the Vessel at the Facility for the Period (as herein defined) and for the use set forth on Schedule A annexed hereto.  This Permit is expressly conditioned upon the Permittee possessing, prior to the Commencement Time (as herein defined), and thereafter maintaining, all valid authorizations, franchises and other applicable approvals or consents from any and all governmental agencies (federal, state and/or local) (collectively referred to herein as the "Approvals") regarding the use and operation of the Vessel in general and at and to and from the Facility.  The Permit granted hereby requires the Permittee to comply with any and all applicable provisions of federal, state, and local laws, rules and regulations, as well as any rules or regulations promulgated by EDC.

2.      **Charges**.      The Permittee shall pay fees for this Permit (the "Charges") at the rate set forth on Schedule A, payable in advance.

3.      **Period.**      The period of this Permit (the "Period") shall commence at the time and date (the "Commencement Time") set forth on Schedule A and shall expire at the time and date ("Expiration Time") set forth on Schedule A, unless earlier canceled, revoked, or otherwise terminated in accordance with the terms of this Permit.

4.      **Use.**      The Permittee shall have the non-exclusive right to use a portion of the Berth Area of the Facility for the purpose set forth on Schedule A and for no other purpose.  The Permittee represents and covenants that the Vessel is owned and controlled by the Permittee.  Any crew responsible for food and beverages sales/service on the Vessel must possess all Federal, State, and City authorizations and permits, and at all times display, as required by law, all permits, licenses and any other signage required by governmental authorities.  At all times that a snack bar is operating, a staff person with a valid New York City Department of Health and Mental Hygiene food handler's license must be present.

5.      **Sunken or Disabled Craft**.  In the event a Vessel operated by or for the Permittee is disabled or is in danger of sinking, or shall sink while located at the Facility, the approaches thereto, or while coming or going from said Facility, or while turning, whether such disaster be partial or total, regardless of the cause thereof, the Permittee will immediately and at its own expense remove the disabled Vessel and leave the Facility and approaches thereto by land and by water free from any wreckage.  If the Permittee fails to remove any such obstruction promptly, Manager may remove it or cause it to be removed at the sole risk and expense of the Permittee.

6.      **Utilities and Services**.      The Permittor is not required to provide any utilities or services for

1

INITIAL

the Permittee or to the Berth Area or the Vessel.

**7.     Insurance.**     Permittee, at its sole cost and expense, shall carry, or cause to be carried, the policies of insurance referenced in Schedule B, evidence of which must be provided upon request to Manager. Certificates of Insurance must be provided to Permittor and approved prior to commencement of the Period.

**8.     Indemnification.**     Permittee agrees to be bound by the indemnification obligations set forth in Schedule C annexed hereto.

**9.     Liens Against Berth Area; Discharge of Liens**     Permittee, by any acts or omissions of the Permittee, the Permittee's Agents or other Permittee's Invitees, shall not create, cause to be created and/or allow to exist, in part or whole (i) any lien, encumbrance or charge upon the Berth Area or any part thereof, or (ii) any lien, encumbrance or charge upon any assets of, or funds appropriated to, Permittor, EDC or the City , or (iii) any other matter or thing whereby the estate, rights or interest of Permittor in and to the Berth Area or any part thereof might be impaired. If any mechanic's, laborer's, vendor's, materialman's or similar statutory lien is filed against the Berth Area or any part thereof, or if any public improvement lien is created, or caused or suffered to be created by the Permittee, or shall be filed against any assets of, or funds appropriated to, Permittor, EDC or the City, then Permittee shall within thirty (30) days after receipt of notice of the filing of such mechanic's, laborer's, vendor's, materialman's or similar statutory lien or public improvement lien, cause it to be vacated or discharged of record by payment, deposit, bond, order of court of competent jurisdiction or otherwise. The provisions of this Section 9 entitled Liens Against Berth Area; Discharge of Liens shall survive the Expiration Time of the Period of this Permit.

**10.     Condition of Berth Area.**     Permittee acknowledges that no representations have been made to Permittee as to (i) the legality of Permittee's use of the Berth Area for any purpose and (ii) the condition of the Berth Area. Permittee has inspected the Berth Area and accepts the Berth Area "as is". The Permittee is responsible for determining the depth of the water in and around the slips and area adjacent to the Facility and determining whether such is sufficient to berth the Vessel at the Berth Area. The Permittee may be directed by the Permittor to provide for proper/additional fendering as necessary as well as to provide for its own gangway from the vessel to the Facility.  Upon the expiration of this Permit, Permittee shall restore the Berth Area to its original condition as at the time of the Commencement Time of this Permit, usual wear and tear excepted, at Permittee's sole cost and expense, to the satisfaction of the Permittor. Permittee agrees not to interfere with the access for or operation of the Facility.

**11.     Structures, Improvements and Personal Property.**     Permittee shall not itself, and shall not permit others to erect, install or maintain upon the Berth Area additions, changes, improvements, signs or structures of any kind other than those now on the Berth Area or specifically authorized by the Permittor.  Upon completion of the Event, Permittee shall remove all improvements, materials, decorations, equipment and other personal property erected, installed, maintained or placed at the Berth Area by Permittee or any of its employees, agents, servants, invitees, independent contractors or subcontractors.

**12.     Compliance with Authorities, Laws, Rules and Regulations, Investigations, Jurisdiction, Waiver of Trial by Jury and Counterclaims.**

(a)     Compliance with Authorities, Laws, Rules and Regulations.  Permittee shall, at Permittee's sole cost and expense, comply with, observe and obey (and to compel its officers, employees, guests, invitees, agents, representatives and others on the Berth Area with its consent to comply and observe) the provisions of this Permit and any and all laws, rules, regulations, requirements, ordinances, resolutions and orders of Permittor and of any and all administrations, departments, bureaus and boards of United States federal government, State

2

INITIAL

of New York, City of New York and other local authorities applicable to this Permit, the Berth Area, the slips or water or lands or lands underwater that are adjacent to the Berth Area, and/or the use, occupancy and maintenance thereof.

(b)     Compliance with Rules and Regulations.       The Permittee covenants and agrees to observe and obey (and to compel its officers, employees, guests, invitees, agents, representatives and others on the Berth Area with its consent to observe and obey) the rules and regulations of the Permittor, as set forth on Schedule D annexed hereto (including amendments and supplements thereto) for the governance of the conduct and operations of the Permittee as may from time to time, during the letting, be promulgated by the Permittor for reasons of safety, security, health, or preservation of property, or for the maintenance of the good and orderly appearance of the Berth Area, or for the safe and efficient operation of the Facility (collectively, the "Rules and Regulations").

(c)     Compliance with Noise Control Code.       Permittee shall comply with 24.201 et.seq. of the Administrative Code of the City of New York (the "Noise Control Code"). Permittee shall not permit or cause to be permitted, operated, conducted, constructed or manufactured on the Berth Area devices and activities which would cause a violation of the Noise Control Code. Any such devices and activities shall incorporate advances in the art of noise control developed for the kind and level of noise emitted or produced by such devices or activities in accordance with the regulations issued by the Department of Environmental Protection of the City of New York, or its successor.

(d)     License Required: This Permit does not grant authority for any operation or use which may require any permit, license or approval. If required, Permittee must obtain any such license, authorization, permit, or approval, at its sole cost and expense. Such compliance includes, but is not limited to, any required review, permit or approval by Permittor, and/or any other applicable governmental entity.

(e)     Joint and Several obligations.  If more than one individual or other legal entity is the Permittee under this Permit, then each and every obligation hereof shall be the joint and several obligation of each such individual or other legal entity.

13.     **Investigations.**      The Permittee agrees to cooperate fully with any investigation, audit, or inquiry conducted by a State of New York ("State") or City governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contract, permit, lease or license that is the subject of the investigation, audit or inquiry.

14.     **Jurisdiction, Waiver of Trial by Jury and Counterclaims.**      This Permit will be performed in the State of New York and the parties consent to its interpretation according to the law of the State of New York. Permittee hereby irrevocably agrees that any action against Permittor, the City, or Apple will be brought in the Supreme Court of New York State in New York County or the Federal Courts in the Southern District of New York and further hereby irrevocably consents to the jurisdiction of the Supreme Court of New York State in New York County or the Federal Courts in the Southern District of New York in connection with any action, suit or proceeding brought by Permittor, City, or Apple or any action, suit or proceeding in which Permittor, the City, or Apple is or becomes a party to enforce any of its rights and remedies under this Permit. The foregoing consent, however, shall not affect or limit in any manner or to any extent the right of Permittor, the City, or Apple to enforce such rights and remedies in any other jurisdiction. To extent permitted by law, the parties shall waive trial by jury in any action or proceeding or counterclaim brought on any matter whatsoever arising out of or in any way connected with this Permit, or

3


INITIAL

the use or occupation of the Berth Area or the Facility. This provision shall survive the Expiration Time or earlier termination of this Permit.

**15.    Non Discrimination.**    Permittee shall not discriminate with respect to its use of the Berth Area or any other portion of the Facility against any person because of race, creed, color, national origin, sex, sexual orientation, age or disability.

**16.    No Subletting and Assignment.**    Permittee shall not sublet any portion of the Berth Area or assign Permittee's interest or any portion thereof under this Permit without Permittor's prior written consent.

**17.    Security.**    Permittee is responsible for the security of the Berth Area and, in conjunction with Permittor and others, the rest of the Berth Area and Permittee's operation. Permittee must coordinate these responsibilities with Permittor, and the other permittees and tenants and users located at the Facility to ensure the overall security of the Berth Area and the Facility. Permittee agrees to cooperate with Permittor to comply with any security measures and restrictions imposed by U.S. Navy, U.S. Coast Guard, Department of Homeland Security, United States Customs, or all other governmental authorities.

**18.    No Interference with the Operations or other Users or Tenants at the Facility.**

(a)    <u>Operations at Facility</u>. Permittee agrees not to interfere with the access for the Facility and not to permit its vehicles (s) or any other personal property or fixture of Permittee to interfere with the access to Facility or interfere with any use or operation of Facility including without limitation to the inspection, construction and/or demolition of any portion of the Facility or any utility.

(b)    <u>Importance of Facility Security</u>. Permittee expressly understands and agrees that security is of utmost importance, accordingly and agrees that the Event, activities and actions of the Permittee and all of the Permittee's Invitees shall not interfere or otherwise compromise the security of the Facility.

**19.    Termination; Expiration.**

(a)    In addition to Permittor's right to terminate this Permit elsewhere in this Permit and notwithstanding any other provision of this Permit, Permittor may terminate this Permit (i) at will for any reason or no reason at any time by giving Permittee not less than thirty (30) days' written notice or, in the event of an emergency, not less than twenty four (24) hours' written notice, (ii) upon written notice to Permittee in the event of a failure by Permittee to pay any amount due hereunder when due, (iii) upon any other default by Permittee of any of its other obligations hereunder (which continues after five (5) days' written notice), unless such default is a recurring default or constitutes an emergency, in which event this Agreement may be terminated immediately upon written notice to Permittee, (iv) if Permittee becomes insolvent or bankrupt in any sense or makes an assignment for the benefit of creditors or if a petition in bankruptcy or for reorganization or for an arrangement with creditors under any federal or state law is filed by or against Permittee, or a bill in equity or other proceeding for the appointment of a receiver or similar official for any of Permittee's assets is commenced, or if any of the real or personal property of Permittee shall be levied upon by any sheriff, marshal or constable, which adversely affects Permittee's ability to perform its obligations hereunder; provided, however, that any proceeding brought by anyone other than the parties to this Permit under any bankruptcy reorganization arrangement, insolvency, readjustment, receivership or similar law shall not constitute an event of default until such proceeding, decree, judgment or order has continued unstayed for more than ninety (90) consecutive days, or (v) Permittee's failure to continuously occupy the Premises or Permittee's failure to continuously conduct Permittee's Business at the Premises, which failure shall continue for more than five (5) calendar days. Upon the expiration of the applicable notice period, this Permit and the Period thereof shall terminate and expire and such time shall be deemed the Expiration Time.

4


INITIAL

(b)     Upon the Expiration Time, Permittee shall vacate the Berth Area and return possession thereof to Permittor and remove the Vessel from the Facility.  In the event that Permittee fails to vacate the Berth Area and return possession thereof to the Permittor and remove the Vessel from the Facility, upon the Expiration Time, Permittor may without notice, re-enter the Berth Area either by force or otherwise, and dispossess Permittee (and any other occupants of the Berth Area) by summary proceedings and/or any other lawful method including self-help through by force or otherwise and including, at the Permittee's cost, hire one or more vessels to remove the Vessel from the Facility and Permittor may remove all the personal property from the Berth Area and hold the Berth Area as if this Permit had not been made. Permittee hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end. Permittee agrees that the Permittor may prohibit the Permittee and the employees, officers, representatives, invitees and agents of the Permittee from entering into Facility immediately after the Expiration Time.

(c)     Additionally, in the event that Permittee fails to vacate the Berth Area and return possession thereof to the Permittor in accordance with the terms of this Permit, Permittee shall be liable for any and all damages to Permittor resulting therefrom, including, without limitation, reasonable attorney's fees, and any other monies paid or incurred by Permittor, for service of process, marshal's fees, and all other costs incurred in summary proceedings and the like and/or the costs to hire one or more vessel-s to remove the Vessel from the Facility.  Permittee hereby waives any right to counterclaim or setoff against Permittor, EDC or the City in such summary proceedings.

(d)     In the event that Permittee leaves any of its property including, without limitation, vehicles, personal property, trade fixtures, in or upon the Berth Area or elsewhere in the Facility at the end of the Period, Permittor may, in its sole discretion, dispose of same and charge Permittee for the cost of such disposal, or keep the property as abandoned property.

**20.     Non-liability of Individuals.**     No officer, official, member, agent, representative or employee of the Permittor, EDC or the City shall be charged personally by Permittee with any liability, or held liable to Permittee under any term or provision of the Permit or because of its execution or because of any breach or alleged breach thereof. Likewise, no Commissioner, officer, official, member, agent, representative or employee of the Permittee shall be charged personally by Permittor, EDC or the City with any liability, or held liable to Permittor, EDC or the City under any term or provision of the Permittee or because of its execution or because of any breach or alleged breach thereof.

**21.     Relocation and Reduction of Berth Area.**     Permittor and the City reserve the right to relocate and/or take back all or any portion of the Berth Area during the duration of this Permit for any purpose including, but not limited to, construction, storage, ingress, egress, and docking of any vessels.

**22.     Survival.**     Any and all obligations, liabilities, covenants, representations, and warranties of Permittee under this Permit which accrue prior to the Expiration Time and/or which survive by the express terms of this Permit, shall survive the Expiration Time or earlier expiration, revocation or termination of this Permit.

**23.     Entire Agreement, Counterparts, and Amendments.**     This Permit contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral and written agreements of the parties with respect to the subject matter. This Permit may be signed in counterparts, each of which, when taken together, shall constitute one and the same agreement. This Permit may not be amended, waived, or revised except by a further agreement in writing signed by the parties hereto.

5

INITIAL

THE REMAINDER OF THIS PAGE
HAS BEEN INTENTIONALLY LEFT BLANK

SIGNATURES ON FOLLOWING PAGE

6



INITIAL

B.250

IN WITNESS WHEREOF, the parties have executed this Berthing Location Permit as of the ___ day of _____, _____.

**PERMITTOR:**

**BILLYBEY MARINA SERVICES, LLC**

By: _____

Name: Donald P. Liloia

Title: Sr. Vice President

Date: 2/14/2020

**PERMITTEE:**

**BOUCHARD TRANSPORTATION**

By: _____

Name: Jon Slyon

Title: Dispatcher

Date: 2/14/2

7

INITIAL

**SCHEDULE A**

**PERMITTEE:**

>B. No. 250 Corp.
>58 South Service Road
>Melville, NY 11747
>
>Bouchard Transportation Co. Inc.
>2100 Frankfurst Avenue
>Baltimore, MD 21226

**VESSEL(S):**

>B. No. 250 – 317 Ft.

**TUGS:**
>Ellen S. Bouchard – 112 Ft.
>Evening Star – 112 Ft.
>Frederick E. Bouchard - 130 Ft.

**FACILITY:**

>South Brooklyn Marine Terminal – West Face

**BERTH AREA:**

>(*See Schedule E*)

**BERTHING PERIOD:**

| | |
|---|---|
| Commencement Time: | February 15, 2020 |
| Expiration Time : | February 29, 2020 |

**USE:**

| | |
|---|---|
| Berthing Only    (yes/no) | YES |
| Passenger Boarding (yes/no) | NO |
| Vessel Servicing (yes/no) | NO |
| Public Access    (yes/no) | NO |

**PERMIT FEE:**          **$21,279.00**

>**Barge:** $639.80 per day for fifteen (15) days for a total of **$9,597.00**
>
>**Tug:** $2.20 per day for fifteen (15) days for a total of **$11,682.00**
>
>>Ellen S. Bouchard: $3,696.00
>>Evening Star:  $3,696.00
>>Frederick E. Bouchard: $4,290.00

8

**INITIAL**

## SCHEDULE A

**PERMITTEE:**

      B. No. 250 Corp.
      58 South Service Road
      Melville, NY 11747

      Bouchard Transportation Co. Inc.
      2100 Frankfurst Avenue
      Baltimore, MD 21226

**VESSEL(S):**

      B. No. 250 – 317 Ft.

**TUGS:**
      Ellen S. Bouchard – 112 Ft.
      Evening Star – 112 Ft.
      Frederick E. Bouchard - 130 Ft.

*revised*

**FACILITY:**

      South Brooklyn Marine Terminal – West Face

**BERTH AREA:**

      (*See Schedule E*)

**BERTHING PERIOD:**
| | |
|---|---|
| Commencement Time: | February 14, 2020 |
| Expiration Time : | February 29, 2020 |

**USE:**
| | |
|---|---|
| Berthing Only    (yes/no) | YES |
| Passenger Boarding (yes/no) | NO |
| Vessel Servicing (yes/no) | NO |
| Public Access    (yes/no) | NO |

**PERMIT FEE:**    <u>**$22,697.60**</u>

    **Barge:** $639.80 per day for sixteen (16) days for a total of <u>**$10,236.80**</u>

    **Tug:** $2.20 per day for sixteen (16) days for a total of <u>**$12,460.80**</u>.

      Ellen S. Bouchard: $3,942.40
      Evening Star:  $3,942.40
      Frederick E. Bouchard: $4,576.00

8

INITIAL

**SCHEDULE B**
**INSURANCE**

(i) Marine Liability Insurance. Permittee shall keep and cause the Vessel to be insured with Marine Protection and Indemnity Insurance (with a Pollution Extension Endorsement) for bodily injury and property damage liability with a per occurrence limit for bodily injury, personal injury and property damage in the amount of not less than (i) $25.0 million in the case of commercial passenger vessel, (ii) $10.0 million in the case of a commercial passenger vessel the Use of which at the Facility is limited to crew access only and in the case of barges and (iii) $300,000 in the case of private passenger vessels, in each case on a per occurrence basis. All insurance shall name as additional insureds or additional assureds: New York City Economic Development Corporation, the City of New York (the "City"), and Apple Industrial Development Corp. ("Apple") and Permittor and their respective members, directors, officers, officials, agents, employees, consultants, contractors and other representatives as additional insureds thereunder. Limits for Pollution Liability shall in the case of (i) and (ii) above be in the amount of $50.0 million.

(ii) Marine Hull Insurance. Permittee shall keep or cause the Vessel to be insured with marine hull insurance under the latest (at the time of issue of the policies in question) form of American Institute of Marine Underwriters' policies, or such other form of policy approved by Permittor, insuring the Vessel against the usual risks covered by such forms (including at the option of Permittee such amounts of increased value and other forms of "total loss only" insurance as are permitted by said hull insurance policies) in an amount in dollars equal the market value of such vessel. While the Vessel is idle or laid up, at the option of Permittee and in lieu of the above mentioned hull and increased value insurance, Permittee may maintain port risk insurance under the latest forms as aforesaid or as approved by Permittor.

(iii) Longshoremen's and Harbor Workers' Compensation Insurance, and as applicable, protection under the Jones Act. For the personnel who work for Permittee, whenever applicable, Permittee shall procure and maintain during the life of this Permit, Longshoremen's and Harbor Workers' Compensation Insurance, and whenever applicable, protection shall also be obtained for liability under the Jones Act and under general maritime law to meet statutory requirements. Permittee shall furnish to Permittor a Certificate of such Insurance upon execution of this Permit.

(iv) Commercial General Liability insurance. Permittee shall be required to obtain and maintain Commercial General Liability insurance, on an occurrence basis, written on the ISO Form CG-0001 (or its equivalent), in the amount of not less than $5.0 million per occurrence for bodily injury (including death), personal injury and property damage and a minimum of $5.0 million aggregate for the duration of this Permit with all the Indemnitees (as defined in this Terms and Conditions (a)) named as additional insureds with coverage for Liquor Legal Liability Insurance (to a limit of $2.0 million per occurrence), contractual liability (at least as described below) and with Independent Contractors Coverage, and with no exclusions for waterfront activities and, along with Business Automobile either by endorsement as part of the CGL policy or by a separate insurance policy, in the amounts and as described in subsection v entitled "Business Automobile Policy".

(v) Business Automobile Policy. If the Business Automobile insurance is not included by an endorsement in the CGL insurance (or if the amount of coverage is less than set forth below), then the Permittee shall be required to obtain and maintain a separate Business Automobile Policy with limits of liability not less than $2.0 million combined single limit per occurrence for bodily injury, personal and property damage. Permittee shall furnish to Permittor a Certificate of such

9

INITIAL

Insurance upon execution of this Permit; and

(b)     Insurance Specifications.

(i) Additional Insureds. The Commercial General Liability insurance, and Protection and Indemnity Insurance (as additional assureds, if applicable) must name as additional insureds all of the parties set forth below ("Additional Insureds").

**LIST OF ADDITIONAL INSUREDS:**
The City of New York (the "City"), New York City Economic Development Corporation, Apple Industrial Development Corp., the Port Authority of NY and NJ and Permittor (collectively referred to as "Additional Insureds"). The Additional Insureds must also be certificate holders and shall be listed on the certificates of insurance to be provided to the Permittor.

Addresses for the Additional Insureds. The applicable addresses for the Additional Insureds are as follows:

New York City Economic Development Corporation
110 William Street
New York, NY 10038
Attn: Carmine Giordano, BAT Facilities Manager

with a copy to Attn: Meredith Jones, General Counsel

Apple Industrial Development Corp.
110 William Street
New York, NY 10038
Attn: Lee Benedict, Apple Vice President

City of New York
Department of Small Business Services,
110 William Street,
New York, New York 10038
Attn: Andrew Schwartz, First Deputy Commissioner

with a copy to:
New York City Law Department
100 Church Street
New York, New York 10007
Attention:  Chief, Economic
Development Division

10

INITIAL

Port Authority of NY and NJ
99 Columbia Street
Brooklyn, New York 11201
Attention: Michael J. Deveney

Billybey Marina Services, LLC
4800 Avenue at Port Imperial
Weehawken, New Jersey 07087
Attention: Donald Liloia

(ii) Certificates of Insurance. At least forty-eight (48) hours prior to the access to the Facility by the Permittee and, as applicable, by any of the Permittee's contractors and subcontractors ("Permittee's Agents"), the Permittee must provide the Permittor with Certificates of Insurance that evidence insurance coverage as required by this Permit for the Permittee, and for each of the Permittee's Agents. Such certificates of insurance must be acceptable to the Permittor.

(iii) Acceptability of Insurance. All types, amounts, limits, self insured retentions, deductibles, exemptions, exclusions, and coverages of insurance required by this Permit as well as the forms that the insurance is written on and the insurance companies issuing such insurance (e.g., a rating by Best of no less than A-; VII) are subject to the acceptability of the Permittor.

(iv) Remaining Liable. Notwithstanding any other provision of this Section pertaining to Insurance, Permittee shall remain liable, whether or not the Permittee has adequate insurance or no insurance to cover the loss or damage for which the Permittee is liable pursuant to the terms of this Permit as well as any liability otherwise arising at law and/or in equity.  In the event of any such loss or damage for which Permittee becomes liable as aforesaid, Permittee shall, at its sole cost and expense, promptly repair or replace the property so lost or damaged in accordance with plans and specifications approved by Permittor or, at the discretion of Permittor, Permittee shall pay in cash the value of repairs or rebuilding, such value to be determined by Permittor, in lieu of performance of such repairs to or rebuilding of the Facility and/or any or all other parts of the Facility;

(v) Waiver of Right of Subrogation. All policies of insurance required by this Section shall contain a written waiver of the right of subrogation with respect to all of the named insureds and all of the Additional Insureds, including, though not limited to, Permittor, NYCEDC, the City of New York and Apple.

(vi) Excess or Umbrella Policies. The insurance required to be carried by Permittee and/or the Permittee's Agents pursuant to the provisions of this Permit may, at the option of Permittee and Permittee's Agents, be effected by excess and/or umbrella policies issued to Permittee and/or the Permittee's Agents, provided, such policies otherwise comply with the provisions of this Permit.

(vii) Primary Insurance. All insurance policies required by this Permit shall be primary protection and neither Permittor, EDC, nor the City of New York, nor any of the other Additional Insureds, will be called upon to contribute to a loss that would otherwise be paid by Permittee's (or Permittee's Agents') insurer.

(d)     Continuing Liability. The provisions of this Terms and Conditions of the Permit entitled "Insurance Requirements" shall survive the expiration of the Period or earlier termination, cancellation or revocation of this Permit and use of the Berth Area.

11

INITIAL

(c)     Port Authority Immunity Clause. The following immunity clause must be endorsed on Permittee's insurance policy and included within its Certificate of Insurance:  The insurer shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority, raise any defense involving in any way the jurisdiction of the tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority. (Atlantic Basin Only)

12

INITIAL

**SCHEDULE C**

**INDEMNIFICATION**

**Indemnification, Defense, and Hold Harmless.**        To the fullest extent permitted by New York State law, Permittee agrees to defend, pay on behalf of, indemnify, and hold harmless The City of New York, New York City Economic Development Corporation, Apple Industrial Development Corp., Permittor and their respective elected and appointed officials, officers, directors, members, agents, representatives, volunteers, and employees (collectively, referred to as the "Indemnitees") from and against any and all claims, liabilities, demands, penalties, fines, actions, suits, settlements, damages, losses, costs, expenses, and judgments (including, without limitation, attorney fees and all costs connected therewith) of whatever kind or nature, known or unknown, contingent or otherwise except that an Indemnitee shall not be indemnified and saved harmless to the extent such claims, liabilities, demands, penalties, fines, actions, suits, settlements, damages, losses, costs, expenses, and judgments are caused by the gross negligence or willful misconduct of that Indemnitee:

    (i)  for injury to any person or persons, including death, or any damage to property of any nature in connection with or arising out of, in whole or in part, (A) any act(s) (intentional or otherwise) or omission(s) or error or negligence of Permittee, Permittee's Agents and/or of their respective officers, officials, employees, invitees, guests, representatives, agents, contractors or subcontractors occurring on, in, at, under the Berth Area or in proximity to the Berth Area and/or any other portion of the Facility, or (B) this Permit, or (C) Permittee's, Permittee's Agents and/or any of their respective officers', officials', employees', invitees', guests', representatives', agents', contractors' or subcontractors' or any other of the Permittee's Invitees' use, occupancy or operations in, on, at or about the Berth Area as well as any other portion of the Facility; or

    (ii)  relating to or arising from any and all liens and encumbrances which may be filed or recorded against the Berth Area and/or any or all other parts of the Facility or any public improvement lien filed against any funds of Permittor, NYCEDC or Apple as a result of actions taken by or on behalf of Permittee, Permittee's Agents and/or any of their respective contractors, subcontractors, agents, representatives, officers, officials, employees, guests or invitees; or

    (iii)  arising out of, or in any way related to, the storage, transportation, disposal, release or threatened release by Permittee, Permittee's Agents, other of the Permittee's Invitees' and/or any of their respective employees, guests, contractors, subcontractors, representatives or agents of any Hazardous Materials (as hereinafter defined) over, under, in, on, from or affecting the Berth Area and/or any other parts of the Facility or any persons, real property, personal property, or natural substances thereon or affected thereby during the Period of this Permit or the berthing of the Vessel, or any claim against or liability of any of the Indemnitees concerning or related to the existence of any Hazardous Materials at the Berth Area and/or any or all other parts of the Facility which claim or liability arose out of or resulted from any acts or omissions during the Period of this Permit or the berthing of the Vessel at the Facility by Permittee, Permittee's Agents and/or any of their respective employees, guests, contractors, subcontractors, representatives or agents.

(b)    Definition of Hazardous Materials. For purposes of this paragraph "Hazardous Materials" means (i) any "hazardous waste" as defined under the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., or (ii) "hazardous substance" as defined under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. Section 9601 et seq., or (iii) "hazardous materials" as defined under the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801 et seq., or (iv) "hazardous

13

INITIAL

waste" as defined under New York Environmental Conservation Law Section 27-0901 et seq., or (v) "hazardous substance" as defined under the Clean Water Act, 33 U.S.C. Section 1321 et seq. or (vi) "petroleum" as defined under the New York State Navigation Law, Chapter 37, Article 12, Section 172 (15), or (vii) petroleum or petroleum products, crude oil or any by-products thereof, natural gas or synthetic gas used for fuel; any asbestos, asbestos-containing material; polychlorinated biphenyl; radon and radioactive materials; medical waste; or (viii) and any additional substances or materials which from time to time are classified or considered to be hazardous or toxic or a pollutant or contaminant under the laws or other rules or regulations of the City of New York, the State of New York, and/or the United States of America.

(c)     Definition of Permittee's Invitees.  For purposes of this paragraph, "Permittee's Invitees" means all persons and entities, including, though not limited to all employees, representatives, contractors, subcontractors, agents, officials, officers, visitors, invitees, guests or members of the general public and parties in connection with the Vessel, that are invited, permitted, solicited, attracted or otherwise allowed access, berth or otherwise be present at the Facility (including, without limitation, roads, walkways, piers and parking areas).

(d)     Continuing Liability. The provisions of this Schedule C shall survive the Expiration Time of the Period, or earlier termination, cancellation or revocation of this Permit and any use of the Berth Area or Pier by the Vessel.

14

INITIAL

## SCHEDULE D

## RULES AND REGULATIONS

In the performance of its obligations hereunder and in the use of the Berth Area:

(i)      Permittee shall conduct its operations in an orderly, lawful and proper manner, so as not to annoy, disturb or be offensive to others near the Berth Area or at the Facility.

(ii)      The Permittee shall control the conduct, demeanor and appearance of its officers, members, employees, agents, representatives, contractors, customers, guests, invitees and those doing business with it. As soon as reasonably possible, the Permittee shall remove the cause of any objection made by the Permittor relative to the demeanor, conduct or appearance of any of the employees of the Permittee or of any such others on the Berth Area with the consent of the Permittee.

(iii)      The Permittee shall remove from the Berth Area and from the Facility all garbage, debris and other waste materials (whether solid or liquid) arising out of its operations hereunder. Any such material which may be temporarily stored shall be kept in suitable waste receptacles in a concealed location, the same to be made of metal and equipped with tight-fitting covers, and in any case to be designed and constructed to contain safely the waste material placed by the Permittee therein. Said receptacles shall be provided and maintained by the Permittee and shall be kept covered except when being filled or emptied.

(iv)      The Permittee shall take all reasonable measures to eliminate vibrations tending to damage the Berth Area or the Facility or any part thereof and Permittee shall not cause or permit to be caused or produced upon the Berth Area, to permeate the same or to emanate therefrom, any unusual, noxious or objectionable smokes, gases, vapors or odors; and if there shall be any such occurrence, Permittee  shall take proper measures to eliminate any such smoke, gas, vapor or odor.

(v)      The Permittee shall promptly raise and remove or cause to be raised and removed any and all objects of any kind, including Vessels or other floating structures and equipment (whether or not intended to be floating), owned or operated by the Permittee, or by a corporation, company or other organization or person associated, affiliated or connected with the Permittee or for which the Permittee, acts as agent, stevedore or terminal operator, (or of others going to or from the Berth Area on business with the Permittee), which shall have sunk, settled or become partially or wholly submerged at the Facility.

(vi)      Permittee shall not throw, discharge or deposit or knowingly permit to be thrown, discharged or deposited any cargo, refuse, ashes or any material whatsoever, into or upon the waters of or about the Berth Area.

(vii)      Permittee shall not do or permit to be done any act or thing at the Berth Area which shall create an inordinate risk of subjecting Permittor to any liability or responsibility for injury to any person or persons or damage to any property.

15

INITIAL

## SCHEDULE E

## BERTHING AREA



16



INITIAL