UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BILLYBEY MARINA SERVICES, LLC,    :

              Plaintiff,    :  Case No. 20-cv-04922 LTS-JLC

           v.    :  **IN ADMIRALTY**

Bouchard Transportation Co., Inc.,    :  **Hon. Laura Taylor Swain**
Motor Tug Ellen  S. Bouchard, Inc.,
Tug Jane A. Bouchard Corp.,    :
Tug Evening Star Corp.,
B. No 252 Corp.,    :  **MEMORANDUM OF LAW**
B. No. 230 Corporation,    **IN SUPPORT OF MOTION**
B. No. 284 Corp.,    :  **FOR ORDER ENFORCING**
B. No. 210 Corporation,    **SETTLEMENT AGREEMENT**
B. No. 262 Corp.,    :
B. No. 250 Corp.,
B. No. 260 Corporation and    :
B. No 282 Corp., *in personam*, and,
M/V ELLEN S. BOUCHARD, IMO No. 8117952,  :
Official No. 644590, her engines, equipment, tackle,
etc., M/V JANE A. BOUCHARD, IMO No. 9269702
Official No. 1139762, her engines, equipment,    :
tackle, etc., M/V EVENING STAR, IMO No.
9629768, Official No. 1234828, her engines,    :
equipment, tackle, etc.,
BARGE B. No. 252, BARGE B. No. 230,    :
BARGE B. No. 284, BARGE B. No. 210,
BARGE B. No. 262, BARGE B. No. 250,    :
BARGE B. No. 260 and BARGE B. No. 282, *in rem,*

          Defendants.    :
------------------------------------------------------------X
McAllister Towing of Connecticut, LLC    :
McAllister Towing of New York, LLC
McAllister Towing of Philadelphia, Inc.    :
McAllister Towing of Baltimore, Inc.
Portland Tugboat LLC    :
McAllister Towing of Narragansett Bay, LLC
d/b/a Providence Steamboat Company    :
Tugz Company, LLC

            :

        Intervening Plaintiffs,

v.                                                   :

Bouchard Transportation Co., Inc.,                   :

    Defendant in personam,                       :

M/T EVENING STAR, IMO No. 9629768,          :
BARGE B. No. 210, BARGE B. No. 230, BARGE B.
No. 250, BARGE B. No. 252, BARGE B. No. 260,  :
BARGE B. No. 262,  BARGE B. No. 282, BARGE B.
No. 284, , in rem, their respective equipment, tackle,
etc., et al.,                                        :

    Defendants in rem.                           :
-------------------------------------------------------------X

## <u>INTRODUCTION</u>

Plaintiff, Billybey Marina Services, LLC ("Plaintiff" or "Billybey") and the

Defendants, Bouchard Transportation Co., Inc., Motor Tug Ellen S. Bouchard, Inc., Tug

Jane A. Bouchard Corp., Tug Evening Star Corp., B. No 252 Corp., B. No. 230

Corporation, B. No. 284 Corp., B. No. 210 Corporation, B. No. 262 Corp., B. No. 250

Corp., B. No. 260 Corporation and B. No 282 Corp. (collectively, "Bouchard" or

"Defendants") settled this case and executed a Settlement Agreement and Mutual Release

dated November 24, 2020 ("Settlement Agreement").  A Stipulation of Dismissal,

Consent to Release Vessels and Consent Order ("Consent Order") and the Settlement

Agreement were subsequently filed with this Court (respectively, Dkt. Nos. 129 and 130).

The Consent Order, which provided that "…the Court shall retain jurisdiction over this

action and the Parties for the purpose of enforcing the terms of the Settlement

Agreement…" was so ordered by this Court on November 30, 2020 (Dkt. no. 131).

The terms of the Settlement Agreement provided for a payment to Billybey for

accrued dockage charges and *custodia legis* expenses ("Payment") – this Payment was

timely delivered and is not in issue.  The Agreement also required the removal of

2

Bouchard's vessels from Billybey's docks within five business days of the date of the Agreement ("Removal Date") and provided that Bouchard would execute Use Permits for those vessels which were not removed by the Removal Date and to pay the anticipated dockage charges in advance.  The form of Use Permit which Bouchard would be required to execute, as well as the discounted rates that it would be charged, were appended to the Settlement Agreement as Exhibit A.  Bouchard has resisted compliance with these latter requirements of the Settlement Agreement since December 2, 2020, the Removal Date.

Specifically, Bouchard did not remove the vessels by the Removal Date, has not executed Use Permits for the expected dockage period (Bouchard has not even informed Billybey what the anticipated dockage period will be) and has not advanced payment for this future dockage, as required by the Settlement Agreement.  Billybey accordingly moves for an Order ("Motion") directing Bouchard to execute Use Permits and prepay the appropriate dockage charges, and awarding Billybey the legal costs it has incurred[1] to enforce the terms of the Settlement Agreement.  A more detailed description of the procedural history and facts leading up to this Motion are set forth below.

## PROCEDURAL HISTORY

On June 26, 2020, Billybey filed this lawsuit against Bouchard *in personam,* and against the vessels, *in rem* (Dkt. No. 1), alleging that Bouchard failed to pay for charges rendered for the dockage services provided by Billybey.  The Verified Complaint sought to enforce Billybey's maritime liens, and thereby recover the amounts due for dockage services provided to Bouchard's vessels.

Warrants of arrest were served on the vessels on July 23, 2020 (Dkt. Nos. 66-72) and July 30, 2020 (Dkt. No. 77).  At the time of the arrests, three barges were docked at

---

[1] Paragraph 7(g) of the Settlement Agreement explicitly provides for the award of legal costs, including reasonable attorneys' fees, expended to enforce the terms of the Settlement Agreement.

South Brooklyn Marine Terminal (the "SBMT Vessels") and five barges and two tug boats were docked at Homeport,[2] a pier located on the eastern shore of Long Island.

On September 28, 2020, while a Motion for Interlocutory Sale of the vessels was pending (Dkt. No. 123), Bouchard filed for protection under Chapter 11 of the Bankruptcy Code, *In Re: Bouchard Transportation Co, Inc*., 20-34682 (DRJ) (S.D. TX, Houston Division).  This resulted in a stay of this proceeding (Dkt. No. 44); however, Bouchard shortly thereafter filed a Motion for Entry of an Order Authorizing the Debtors to Pay Certain Prepetition Claims of Trade Claimants on October 20, 2020 ("Bouchard Motion"), *In Re: Bouchard Transportation Co, Inc*., Case No. 20-34682 (DRJ), Dkt. No. 94 – a copy of the Bouchard Motion is appended to the Declaration of Christopher Raleigh ("Raleigh Declaration") as Exhibit A.[3]  The Bouchard Motion was granted on October 22, 2020 (the "Interim Order"), *In Re: Bouchard Transportation Co, Inc*., Case No. 20-34682 (DRJ), Dkt. No. 139 (Exhibit B).  The effect of the Bouchard Order was to allow Bouchard to pay or settle pre-petition vendor claims, lien claims and trade claims ("Vendors[4] Claims") without further approval from the Bankruptcy Court:

> The Debtors are authorized, but not directed, in their sole discretion, to pay the Vendor Claims in the ordinary course of business and consistent with prepetition practices in the amounts and categories described in the Motion. (Bouchard Order, ¶ 1)

---

[2] The Barges B. No. 250, B,. No. 260 and B. No. 262 were the vessels docked at SBMT. The vessels docked at Homeport were Barges B. No. 252, B. No. 230, B. No. 284, B. No. 210 and B. No. 282 and the tugs, ELLEN BOUCHARD and EVENING STAR.

[3] All Exhibits referred to hereinafter are appended to the Raleigh Declaration.

[4] Vendors are defined in the Bouchard Motion as "third party vendors, suppliers, services providers, and contractors that provide goods and services…These goods and services include, among others, critical maintenance & repair, docking, towing, fuel, supplies, and replacement parts." (Bouchard Motion, ¶7)

Shortly after the Bouchard Order was entered, its maritime counsel[5] entered into settlement negotiations with the undersigned which resulted in the settlement terms that were memorialized in the Settlement Agreement that was filed with this Court. (Dkt. No. 130)  Following execution of the Settlement Agreement, the Consent Order was filed which, in addition to dismissing Billybey's claims with prejudice, provided for the release of Bouchard's vessels from arrest.  The Consent Order also provided that the Court would retain jurisdiction over the parties for the purpose of enforcing the Settlement Agreement's terms. (Dkt. No. 131)

Another procedural obligation, imposed by the Settlement Agreement, required Bouchard to file a motion with the Bankruptcy Court seeking approval of the Mutual Release provision found in paragraph 3 of the Settlement Agreement ("Approval Motion").  This was necessary because, after review of the Settlement Agreement, bankruptcy counsel for Bouchard and Billybey agreed that the Bouchard Order authorized Bouchard to enter into all elements of the Settlement Agreement with the exception of the Mutual Release provision.  The Approval Motion was timely filed by Bouchard's bankruptcy counsel with the Bankruptcy Court on November 25, 2020, *In Re: Bouchard Transportation Co., Inc., et al.*, Case No. 20-34682 (DRJ), Dkt. No. 253 in accordance with paragraph 3(a) of the Settlement Agreement.  On December 20, 2020, counsel for Bouchard filed a Certificate of No Objection as to the Approval Motion with the Bankruptcy Court. *In Re: Bouchard Transportation Co., Inc., et al.*, Case No. 20-34682 (DRJ), Dkt. No. 328  The Approval Motion was granted and an Order Authorizing Entry Into and Performance Under the Settlement Agreement By and Among the Debtors

---

[5] All settlement discussions were conducted between the undersigned and Michael Chalos, who is Of Counsel to Chalos & Co., P.C., the firm that is counsel of record for Bouchard in this proceeding.

and Billybey ("Settlement Approval Order") was entered by the Court on December 21, 2020. *In Re: Bouchard Transportation Co., Inc., et al.*, Case No. 20-34682 (DRJ), Dkt. No. 333 (Exhibit C)

## **FACTS NECESSITATING THIS MOTION**

In addition to making Payment for the outstanding dockage charges and *custodia legis* expenses, [6] and filing the Approval Motion discussed above, the Settlement Agreement also required that Bouchard:

- Remove the three vessels from SBMT by December 2, 2020, the Removal Date. Bouchard could either shift the SBMT vessels to Homeport or simply take them away, but their removal from SBMT had to be completed by December 2nd. Failing compliance with this obligation, paragraph 2(a) of the Settlement Agreement explicitly permitted Billybey to shift the SBMT Vessels at Bouchard's expense, if Bouchard did not timely remove the SBMT Vessels. (Dkt. No. 131, ¶ 2(a))

- Remove the vessels from Homeport by the Removal Date; or, enter into Use Permits for those vessels which remained at Homeport and prepay dockage charges through the date that the vessels were expected to remain at the facility. Bouchard timely removed one tug, the EVENING STAR, from Homeport. Other than this, it did not remove or shift any of the SBMT Vessels nor did it remove any of the vessels docked at Homeport by the Removal Date.  Furthermore, it failed to execute Use Permits for the vessels which it had not moved.

This Court is already aware that timely removal of the SBMT Vessels was critical, because the facility is owned by the City of New York and had been leased by

---

[6] As stated in the Introduction, the Payment required in paragraph 1(a) of the Settlement Agreement was timely paid by Bouchard.

the City to an entity which required that the three SBMT Vessels be removed (Dkt. No. 127).[7]  The undersigned spoke to Bouchard's counsel on the evening of December 2, 2020 to inquire when the SBMT Vessels would be removed and to determine Bouchard's intentions with respect to the remaining vessels at Homeport.  This discussion was confirmed in an email sent to Bouchard's counsel on December 3, 2020 (Exhibit D) which advised that the SBMT Vessels must be removed or shifted immediately, and Use Permits executed and dock charges prepaid for the vessels which remained at Homeport.  When no response was received, another email was sent at the close of business of the same day notifying Bouchard, through its counsel, that Bouchard was in default under the terms of the Settlement Agreement. (Exhibit E) Thereafter the following communications were exchanged with Bouchard's counsel:

- December 5: Bouchard claimed that it could not move the SBMT Vessels because they had not been properly "maintained" by the Substitute Custodian during the period of arrest.  Since the SBMT Vessels are "dumb" barges that need a tug to move them, the validity of this assertion was a red herring, as was the claim that the Substitute Custodian had an obligation to "maintain" the barges. This position was rejected by the undersigned. (Exhibit F)

- December 9: Billybey received another communication from the City of New York demanding that the SBMT Vessels be immediately removed so that the new lessee's construction manager could complete required work on the dock. Bouchard was notified of this demand and advised that, if the SBMT Vessels were not removed by close of business on December 11, then Billybey would shift them to Homeport at Bouchard's expense, as explicitly permitted in paragraph 2(a) of the Settlement Agreement. (Exhibit G)  Bouchard's counsel confirmed receipt of this communication but did not substantively respond.  The undersigned followed up with Bouchard's counsel on December 10, but did not receive a response. (Exhibit H)

---

[7] Shifting of the SBMT Vessels to Homeport was the subject of an application made to this Court by National Maritime Services, Inc., the Substitute Custodian appointed by the Court in this proceeding and in *Wells Fargo Bank, N.A. v. Bouchard, et al.*, 20-cv-04695-LTS-JLC.  A letter from the City requesting that the SBMT Vessels be removed was appended as Exhibit C to that motion. The Court denied the Substitute Custodian's application, without prejudice, and directed it to apply to the Bankruptcy Court for the requested relief or to seek an Order lifting the stay. (Dkt.no. 128)

- December 11: As the SBMT Vessels had not been moved by close of business on December 11, 2020, nor had Bouchard executed Use Permits or prepaid dockage charges for any of the vessels at Billybey's docks, another notice of default was sent which advised that Billybey would be shifting the SBMT Vessels and invited Bouchard to have a representative in attendance during the transfer of these barges to Homeport. A formal request was also transmitted, pursuant to the Court's Individual Rules, for a telephone conference prior to the filing of a motion to enforce the Settlement Agreement. (Exhibit I)

- December 12-14: Bouchard's counsel advised that Bouchard would shift the SBMT Vessels from SBMT to Homeport during the weekend, and on December 14, confirmed this had been done. (Exhibit J)

- December 16: As Bouchard had still not executed Use Permits or prepaid any dockage charges for the nine vessels which were now docked at Homeport, we reiterated our request for a "meet and confer" call, prior to making a motion to enforce the Settlement Agreement. (Exhibit K) Counsel confirmed he would confer with his client, but asserted that this Court could not hear this issue because of the stay. Later that day, Bouchard's counsel requested a breakdown of the amounts owed for each vessel through the end of December. (Exhibit L) The breakdown was provided the same day; however, the undersigned emphasized that the Use Permits for the vessels docked at Homeport must also be executed and returned. (Exhibit M)

- December 17: Bouchard raised a question as to the appropriate "start" date for the charges, to which we immediately responded. (Exhibit N)

- December 18: Bouchard's counsel confirmed that payment for dockage charges through December 20, 2020 ($89,370.00) would be wired to Billybey. This wire was done, however Bouchard did not execute and return the Use Permits. We were further informed that Bouchard would pay additional charges on December 31 if the vessels still remained at Homeport and that execution of the Use Permits "is currently under discussion." (Exhibit O) As it had been nearly one month since the Settlement Agreement had been executed, we demanded that Bouchard either provide executed Use Permits or that its counsel participate in a conference call prior to our filing the within motion. Bouchard's counsel then advised that the Use Permits would not be executed because they contained an "indemnification clause" and that Bouchard declined to sign them until the Bankruptcy Court ruled on the Approval Motion filed by Bouchard's bankruptcy counsel. (Exhibit P) These advices were also confirmed by Bouchard's counsel in a telephone discussion which took place that evening.

Approximately four weeks have passed since the Settlement Agreement was

executed and, during that time, attempting to convince Bouchard to comply with the

straightforward terms of the Settlement Agreement has been the legal equivalent of "pulling teeth."  Billybey accordingly seeks an Order directing Bouchard to execute Use Permits for the vessels which remain at Homeport, direct prepayment of the agreed upon dockage charges and award Billybey the legal costs it has incurred in its attempts to enforce the terms of the Settlement Agreement.

## ARGUMENT

I. **Bouchard Should be Directed to Execute the Use Permits and Pre-pay the Dockage Charges for the Vessels Docked at Homeport**

### A. This Court Has Jurisdiction to Enforce the Settlement Agreement

It is black letter law in the Second Circuit that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999); accord, e.g., *Lenington v. Kachkar*, 633 F. App'x 59, 60 (2d Cir. 2016); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, No. 04-3528, 2005 WL 1076552 at *1 (2d Cir. May 6, 2005); *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC*, 12 Civ. 3723, 2017 WL 985875 at *6 (S.D.N.Y. Mar. 10, 2017); *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, No. 15-CV-2013, 238 F. Supp. 3d 375, 386 (E.D.N.Y., 2017), *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 04 Civ. 1621, 2005 WL 1377853 at *4 (S.D.N.Y. June 9, 2005) (Peck, M.J.).

There is also no question that, under the terms of the Consent Order (Dkt. No. 131), this Court retained jurisdiction over the Parties for the purpose of enforcing the terms of the Settlement Agreement.  Having retained jurisdiction over the parties for this purpose, this Court has the power to enforce the terms of the Settlement Agreement: "A trial court has inherent power to enforce summarily a settlement agreement when the

9

terms of the agreement are clear and unambiguous." *Omega Eng'g, Inc. v. Omega S.A.,* 432 F.3d 4378, 444 (2d Cir. 2005).

Further, since the Consent Order specifically manifested the Court's intention to retain jurisdiction of the parties for the purpose of enforcing the terms of the Settlement Agreement, the Court has jurisdiction to enforce the settlement. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 381 (1994).

### B.  This Motion Does Not Violate the Bankruptcy Stay

As discussed above, the Interim Order specifically authorized Bouchard "…to pay the Vendor Claims in the ordinary course of business and consistent with prepetition practices…" (In re: *Bouchard Transportation Co., Inc. et al*, Case No. 20-34682 (DRJ), Dkt. No. 139, Exhibit B).

There is no question that the Settlement Agreement was duly executed by authorized representatives, who had the assistance of bankruptcy and maritime counsel throughout the negotiation and execution of the Settlement Agreement.  It also follows that requiring Bouchard to comply with the terms of the Settlement Agreement does not violate the stay, as Bouchard now appears to contend.  The stay only prohibits an action or proceeding against Bouchard that was or could have been filed before the commencement of the bankruptcy case.  This Motion is an action to enforce a post-petition obligation, specifically the terms of the Settlement Agreement, so the Motion does not constitute a violation of the stay.

Furthermore, paragraph 1 of the Settlement Approval Order (Exhibit C) provides, *inter alia*:

The Debtors are authorized to enter into the Settlement Agreement <u>and take all actions necessary to implement the Settlement Agreement attached hereto</u> as

**Exhibit 1**, including with respect to the releases thereunder, pursuant to sections 105 and 363(b) of the Bankruptcy Code and rule 9019 of the Bankruptcy Rules. (emphasis supplied)

And, in addition, paragraph 2 of the Settlement Approval Order states:

The Settlement Agreement is approved in all respects, shall be binding and enforceable in accordance with its terms on the Debtors, their estates, Billybey, all creditors and parties-in-interest, all successors and assigns of the Debtors and their affiliates… (emphasis supplied)

Given that the Bankruptcy Court has stated that the Settlement Agreement is approved in all respects, is binding and enforceable in accordance with its terms and has authorized "all actions necessary to implement the Settlement Agreement"; and that the Settlement Agreement itself provides, at paragraph 7(l) that "(t)he Parties acknowledge and agree that the Court[8] shall retain jurisdiction over the Parties in connection with any dispute related to enforcement of the terms of this Agreement…" it is patent that this Court has the authority, and jurisdiction over the Parties, to enforce the terms of the Settlement Agreement.

Notably, the Settlement Agreement does <u>not</u> provide that the Bankruptcy Court retain jurisdiction to enforce it, unlike many bankruptcy settlements. In fact, Bouchard made a contrary suggestion in its Approval Motion when it stated that Bankruptcy Court approval was not required for <u>any</u> aspect of the Settlement Agreement other than the mutual releases.

Given the above, it follows that Billybey should be able to invoke the assistance of this Court to enforce the Settlement Agreement. Asserting that Billybey cannot exercise its rights under the Settlement Agreement without further Bankruptcy Court approval is a meritless argument.

---

[8] "Court" is defined at page 1, in the first WHEREAS clause, as The United States District Court for the Southern District of New York. Dkt. No. 130

### C.  The Settlement Agreement Should Be Enforced

The settlement here is clear and unambiguous.  Bouchard was given until the Removal Date (five business days after the date of the Settlement Agreement), to remove its vessels from Billybey's docks.  It failed to do so, thereby obligating Bouchard to execute Use Permits for the period of the expected dockage and pay the dockage charges in advance.

Requiring Bouchard to comply with the terms of the Settlement Agreement by executing the Use Permits is not an elevation of form over substance.  The Use Permits are critical to the protection of Billybey and the City of New York because they delineate the rights, obligations and liabilities of the parties and impose clear insurance and indemnity obligations on Bouchard with respect to the vessels that it docks at Homeport.  A form of the Use Permit, which Bouchard was required to execute with respect to the vessels that are docked at Homeport, was appended to the Settlement Agreement and reviewed by its counsel.  This was done so there would be no question as to what Bouchard would be expected to execute, and agree to, should it fail to remove vessels from Billybey's docks by the Removal Date.

## II.  Billybey Should Be Awarded the Legal Costs Incurred Enforcing the Terms of the Settlement Agreement

Paragraph 7(g) of the Settlement Agreement states, in pertinent part, as follows: "In the event of any legal action between or among the Parties arising out of or in relation to this Agreement, or to enforce this Agreement, the prevailing Party in such legal action shall be entitled to recover all of its costs and expenses, including reasonable attorneys' fees."

In New York, a party is entitled to recover attorneys' fees in a litigation if such a recovery is "authorized by agreement between the parties, statute or court rule." *Hooper Assoc. Ltd. v. AGS Computers, Inc.,* 74 N.Y. 2d 487, 491 (1989).  In this instance, the attorneys' fees and costs incurred by Billybey enforcing the terms of the Settlement Agreement are recoverable pursuant to the contractual language of the Settlement Agreement.  If this aspect of Billybey's Motion is granted, a supplemental Declaration will be filed setting forth its legal costs and expenses that were incurred enforcing the Settlement Agreement.

**Conclusion**

Billybey respectfully requests that the Court grant its Motion, and issue an Order directing Bouchard to execute the Use Permits and  prepay the dockage charges required therein.  Billybey further requests that the Order award it the legal costs, including reasonable attorneys' fees, that it has incurred enforcing the terms of the Settlement Agreement.  Upon issuance of the Court's Order, counsel for Billybey will submit a supplemental Declaration setting forth the legal costs it has incurred due to Bouchard's failure to comply with the Settlement Agreement.

Dated: December 22, 2020

COZEN O'CONNOR, P.C.
A Pennsylvania Professional Corporation

By:  /s/ Christopher Raleigh
Christopher Raleigh
Geoffrey D. Ferrer
Attorneys for Plaintiff,
Billybey Marina Services, LLC
45 Broadway, 16th Floor
New York, New York  10006
Tel. No.:  (212) 509-9400