UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BILLYBEY MARINA SERVICES, LLC,

       Plaintiff,

  -v-                                             No.   1:20-cv-04922-LTS-JLC

BOUCHARD TRANSPORTATION CO.,
INC., et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

       In a Memorandum Order dated January 14, 2021, (docket entry no. 139), the Court awarded Plaintiff Billybey Marina Services, LLC ("Plaintiff" or "Billybey") its legal expenses, including reasonable attorneys' fees, incurred in the enforcement of the parties' Settlement Agreement and Mutual Release (docket entry no. 130 ("Settlement Agreement")), and directed the parties to make submissions concerning the appropriate amount of that award, which the parties have done. The Court has considered carefully the parties' submissions and arguments, and for the following reasons, Plaintiff is awarded $34,470.00 in attorneys' fees.

BACKGROUND

       This action was instituted on June 26, 2020, when Plaintiff filed suit against Defendants Bouchard Transportation Co., Inc., Motor Tug Ellen S. Bouchard, Inc., Tug Jane A. Bouchard Corp., Tug Evening Star Corp., B. No. 252 Corp., B. No. 230 Corporation, B. No. 284 Corp., B. No. 210 Corporation, B. No. 262. Corp., B. No. 250 Corp., B. No. 260 Corporation and B. No. 282 Corp. (collectively, "Bouchard" or the "Defendants"), and M/V ELLEN S.

BOUCHARD, M/V JANE A. BOUCHARD, M/V EVENING STAR, BARGE B. No. 252, BARGE B. No. 230, BARGE B. No. 284, BARGE B. No. 210, BARGE B. No. 262, BARGE B. No. 250, BARGE B. No. 260 and BARGE B. No., 282, in rem. (Docket entry no. 1 ("Complaint").)

In short, Plaintiff is a pier operator, and Defendants are barge owners who contracted to store their vessels at Plaintiff's pier. (Complaint at 1-12.) The Complaint alleged that, after Defendants' docking permits had expired, Defendants improperly held over and failed to vacate their berths. (Id.) Plaintiff sued Defendants for breach of contract. (Id. at 12-15.) On November 24, 2020, the parties entered into the Settlement Agreement. That Agreement provided, in relevant part, as follows regarding attorneys' fees:

> In the event of any legal action between or among the Parties arising out of or in relation to this Agreement, or to enforce this Agreement, the prevailing Party in such action shall be entitled to recover all of its costs and expenses, including reasonable attorneys' fees.

(Settlement Agreement ¶ 7(g).)

On November 30, 2020, the Court entered a Stipulation of Dismissal with Prejudice, Consent to Release of Vessels, and Consent Order, directing the parties to comply with the terms of the Settlement Agreement and retaining jurisdiction over the action for purposes of enforcing the Agreement. (Docket entry no. 131 ("Consent Order").) On December 22, 2020, Plaintiff filed a Motion for Order Enforcing the Settlement Agreement, contending that Defendants had breached the terms of the Agreement. (Docket entry no. 132 ("Motion to Enforce").)

On January 14, 2021, the Court issued a Memorandum Order directing that Defendants comply with the terms of the Settlement Agreement, and directing that Plaintiff was to be "awarded legal costs, including reasonable attorney's fees and other expenses, it has

incurred in the enforcement of the Settlement Agreement." (Docket entry no. 139.) Plaintiff subsequently filed a Proposed Order Awarding Legal Costs and a Declaration in Support thereof, asserting its entitlement to $34,470.00 in expenses. (Docket entry. no 140 ("Decl. in Support").) Defendants filed an Opposition (docket entry no. 142 ("Opposition")), and Plaintiff filed a Reply (docket entry no. 143 ("Reply").).[1]

DISCUSSION

In federal litigation, the general rule regarding attorneys' fees—known as the "American Rule"—provides that each party bears its own legal costs and fees. McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312 (2d Cir. 1993). However, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." Id. at 1313. "Under the law of New York, a settlement agreement in writing between parties represented by counsel is binding and, essentially, a contract . . . subject to the rules governing the construction of contracts." Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 661 (2d Cir. 1994) (citations and quotation omitted).

Here, the parties' Settlement Agreement expressly authorizes the award of "reasonable attorneys' fees" which a party incurs "to enforce this Agreement." (Settlement

---

[1] The Court notes that Defendant Bouchard Transportation Co. is currently a Debtor in Possession in an ongoing Chapter 11 bankruptcy proceeding pending before Bankruptcy Judge, David R. Jones, in the U.S. Bankruptcy Court for the Southern District of Texas, which was filed on September 28, 2020. See In re Bouchard Transportation Co., Inc., et al., Case No. 20-34682 (DRJ). The bankruptcy court has authorized Bouchard's entry into and full performance of the Settlement Agreement and all of Bouchard's obligations thereunder. See id., docket entry no. 333 (Order (I) Authorizing Entry into and Performance under the Settlement Agreement by and among the Debtors and Billybey with respect to the Releases Thereunder and (II) Granting Related Relief).

Agreement ¶ 7(g).)  Defendants here do not dispute that the Agreement entitles Plaintiff to recover attorneys' fees arising out of enforcement of the Agreement, but dispute the reasonableness of Plaintiff's fee request.[2]

In determining what constitutes a reasonable fee award, courts typically calculate the "lodestar figure," which represents the presumptively reasonable fee amount.  Perdue v. Kenny A. Ex rel. Winn, 559 U.S. 542, 551-53 (2010).  The presumptively reasonable fee is computed by "multiplying a reasonable hourly rate by the number of reasonably expended hours."  Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011).  Accordingly, the Court must determine (1) what hourly rate is reasonable, and (2) what number of hours expended is reasonable in light of Plaintiffs' degree of success.  Barbour v. City of White Plains, No. 07-CV-3014-RPP, 2013 WL 5526234, at *3 (S.D.N.Y. October 7, 2013).

Reasonable Hourly Rate

First, the Court must determine the reasonable hourly rates for Plaintiff's attorneys.  Plaintiff requests attorneys' fees for the services of three groups of individuals: (1) three maritime attorneys who worked on enforcing the Settlement Agreement; (2) two

---

[2]   Defendants argue that the Motion to Enforce was unnecessary and should never have been filed in the first place, contending that they were in the process of complying with all terms of the Agreement (or, alternatively, that they had good reasons for their non-compliance).  Based on this premise, Defendants appear to argue that Plaintiff does not deserve to recover the full amount of attorneys' fees that it incurred in attempting to litigate the "unnecessary" Motion to Enforce.  Plaintiff, in turn, argues that: (1) Defendants failed to comply with the Agreement in multiple respects; (2) the Court already ruled in its January 14, 2021, order that Defendants failed to comply; and (3) in any event, Defendants' excuses for their non-compliance have no bearing on the attorneys' fees calculation.  The Court agrees with Plaintiff.  Defendants' arguments on this topic constitute an improper attempt to re-litigate the merits of the Motion to Enforce, and are not relevant to the issue of calculating the award of attorneys' fees.

bankruptcy attorneys who performed consulting work; and (3) one paralegal who performed administrative work.  Defendants contest the hourly rates requested by Plaintiff for this work, arguing that the rates requested by Plaintiff are unreasonably high, even given the attorneys' experience and qualifications.  The Court concludes that the rates requested for the services of the maritime attorneys, the paralegal, and the bankruptcy attorneys are reasonable.

In determining a reasonable hourly rate, courts look to what a "reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Bergerson, 652 F.3d at 289-90 (quotation omitted).  Reasonable hourly rates are informed by the rates "prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (citation and quotation omitted).

In maritime cases, the Southern District has approved a wide range of hourly rates, often within the $300-$500 range.  See, e.g., Interglobo Customs Broker, Inc. v. Sunderland Bros. Co., No. 19-CV-5723-GBD-JLC, 2019 WL 5996281, at *9 (S.D.N.Y. Nov. 14, 2019) (approving rate of $410 per hour for maritime attorney), report and recommendation adopted, No. 19-CIV-5723-GBD-JLC, 2020 WL 409685 (S.D.N.Y. Jan. 24, 2020); GlobeRunners Inc. v. Env't Packaging Techs. Holdings, Inc., No. 18-CV-4939-JGK-BCM, 2020 WL 1865536, at *5 (S.D.N.Y. Mar. 6, 2020) (approving hourly rates of $430 and $515 for maritime attorneys with "nearly five decades of litigation experience"), report and recommendation adopted, No. 18-CV-4939-JGK, 2020 WL 1862565 (S.D.N.Y. Apr. 14, 2020); PMJ Cap. Corp. v. Lady Antoinette, No. 1:16-CV-06242-AJN-SDA, 2019 WL 7500470, at *2 (S.D.N.Y. Nov. 1, 2019) (approving hourly rate of $300 for "a maritime attorney with over 30 years of experience"), report and recommendation adopted sub nom. PMJ Cap. Corp. v. Bauco,

No. 16-CV-6242-AJN-SDA, 2020 WL 91562 (S.D.N.Y. Jan. 8, 2020).  Here, Plaintiff requests a fee rate of $525 per hour for Mr. Christopher Raleigh, Mr. Geoffrey Ferrer, and Ms. Anne Mickey.  All three attorneys work for Cozen O'Connor, a large firm based in Philadelphia.  Mr. Raleigh, Mr. Ferrer, and Ms. Mickey have 40, 44, and 39 years' experience in maritime law, respectively.  Although this rate falls somewhat on the high end of rates typically charged in similar maritime cases, the Court concludes that it is reasonable given the attorneys' experience and qualifications and the relatively complex nature of this case.

As for bankruptcy attorneys (or attorneys working on similarly-complex commercial litigation), there are likewise a wide range of hourly rates that have been approved by the Southern District in recent years.  See, e.g., In re Relativity Fashion, LLC, 565 B.R. 50, 71 (Bankr. S.D.N.Y. 2017) (collecting cases which show the range of fees previously awarded to experienced partners in bankruptcy cases, ranging from $675 per hour to $1,425 per hour); City of Almaty, Kazakhstan v. Ablyazov, No. 15-CV-05345-AJN-KHP, 2020 WL 2488179, at *1 (S.D.N.Y. May 14, 2020) (approving hourly rate of $925 for partner specializing in "complex commercial disputes"), reconsideration denied, No. 15-CV-05345-AJN-KHP, 2020 WL 5076823 (S.D.N.Y. Aug. 27, 2020); Tiffany & Co. v. Costco Wholesale Corp., No. 13-CV-1041-LTS-DCF, 2019 WL 120765, at *10 (S.D.N.Y. Jan. 7, 2019) (finding that hourly rates between $625 and $845 for a partner "are reasonable considering the prevailing rates for firms engaging in complex litigation in this district").  Here, Plaintiff requests a fee rate of $630 per hour for Mr. Eric Scherling and $815 an hour for Mr. John Carroll, both of whom work for Cozen O'Connor in the firm's bankruptcy, insolvency, and restructuring practice.  The Court finds these rates to be reasonable, given the complexity of the case and the range of prevailing rates typically charged by experienced bankruptcy attorneys in this District.

Finally, Plaintiff requests a fee of $265 per hour for Ms. Alina Kaller, a paralegal at the firm. Though this rate falls on the high end for paralegals, it is not wholly outside the range of typical prevailing rates and is accordingly approved. See, e.g., Polanco, 626 B.R. at at 31-32 (approving hourly rate of $200 for paralegal's time); Ballinasmalla Holdings Ltd. v. FCStone Merch. Servs., LLC, No. 18-CV-12254-PKC, 2020 WL 814711, at *2 (S.D.N.Y. Feb. 19, 2020) (approving hourly rate of $290 for "paralegal with over 14 years of experience").

Reasonable Hours Expended

Next, the Court must determine the reasonable number of hours expended. Plaintiff asserts that its legal professionals expended a total of 65.7 hours on this matter. This principally encompasses time that Plaintiff's attorneys spent communicating with opposing counsel and Billybey regarding efforts to enforce the Agreement; analyzing the effect of the bankruptcy action on this enforcement matter; drafting the motion to enforce the Agreement; and drafting the submissions in support of its request for an award of attorneys' fees. Defendants contest Plaintiff's hours calculation in three main respects, contending that: (1) the time spent by bankruptcy partners should not be included in the fee calculation; (2) partners improperly billed time for low-level clerical tasks; and (3) the hours should be reduced due to improper block billing. The Court rejects these arguments and finds that the number of hours expended was reasonable.

First, Defendants assert that the hours billed by the bankruptcy attorneys should not be included in the final fee calculation, contending that the bankruptcy work was "completely unrelated and unnecessary to the Motion to Enforce." Plaintiff, however, contends that specialized bankruptcy expertise was needed in order to confirm that its attempts to enforce

the Settlement Agreement would not violate the bankruptcy stay[3] that was then in effect. In fact, Plaintiff states that it was Defendants' counsel who repeatedly asserted that the bankruptcy stay prevented this Court from hearing the attorneys' fee matter. This assertion is supported by several emails from Defendants' counsel—one of which states that Defendant's counsel "[does] not believe SDNY can hear this matter without the stay order currently in place being lifted by the Bankruptcy Court." (Decl. in Support ¶ 19.) The Court is persuaded by Plaintiff's arguments on this point, and agrees that the input of bankruptcy counsel was necessary to determine the legal effect of the stay. These hours were properly included in Plaintiff's fee application.

Second, Defendants argue that partners at Plaintiff's law firm improperly billed time for low-level clerical and administrative tasks. It is true that, when computing attorneys' fees, attorneys are generally not permitted to be compensated for clerical tasks such as photocopying, organizing case files, or preparing documents for mailing. See, e.g., Lilly v. City of New York, 934 F.3d 222, 233-34 (2d Cir. 2019) (noting that "clerical tasks . . . such as sending and receiving faxes, requesting and receiving medical records, serving papers, and hand-delivering courtesy copies" were not appropriate to be billed at attorney's rate of $450 per hour); Grant v. City of Syracuse, 357 F. Supp. 3d 180, 203 (N.D.N.Y. 2019) (noting that "[c]lerical tasks such as organizing case files and preparing documents for mailing are not compensable"

---

[3] When a debtor files for Chapter 11 bankruptcy, as Defendant Bouchard did here, an automatic stay of creditor actions against the debtor goes into effect. 11 U.S.C. § 362(a). However, here the Bankruptcy Court issued a settlement approval order on December 21, 2020, which authorized the parties to enter into the Settlement Agreement and to "take all actions necessary to implement the Settlement Agreement." See In re: Bouchard Transportation Co., Inc. et al, Case No. 20-34682 (DRJ), docket. entry no. 333, (Order (I) Authorizing Entry into and Performance under the Settlement Agreement by and among the Debtors and Billybey with respect to the Releases Thereunder and (II) Granting Related Relief).

but that "paralegal tasks such as the . . . preparation of trial exhibits and witness binders are compensable"); In re Hudson, 364 B.R. 875, 881 (Bankr. N.D.N.Y. 2007) ("The court considers administrative activities, photocopying, organizing documents, etc., [to be] clerical tasks included in a firm's overhead rather than services of a legal nature.").

However, in the present case, Defendants do not point to any specific objectionable billing entries which show that partners billed time for clerical matters. And indeed, the Court's review of the billing entries does not reveal any such clerical tasks which were performed by partners—it appears that the vast majority of the attorney time was spent on communicating with opposing counsel and Billybey regarding enforcement of the Agreement; drafting the motion to enforce the Agreement; and drafting the present fee application. The Court rejects Defendants' argument as unsupported by the record.

Third, Defendants argue that many of the entries included improper block-billing and excessive time usage for matters like internal conferences, communications, and reading emails. Block-billing refers to the aggregation of multiple discrete tasks into a single billing entry. While block-billing "is not automatically disfavored by courts in this district," it can at times "make it difficult for a court to conduct its reasonableness analysis" because "a single billing entry might mix tasks that are compensable with those that are not." Hnot v. Willis Grp. Holdings Ltd., No. 01-CV-6558-GEL, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008). The generally accepted approach to block-billing is to order fee reductions only where "the hours billed were independently unreasonable" or "the block-billing was mixing together tasks that were not all compensable." Id. (collecting cases); see also Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (explaining that fees should be reduced for block-billing only when the block-billing "renders it difficult to account properly for the expenses related solely to [the

compensable] matter"). Thus, absent evidence that the block-billing has obscured specific underlying unreasonable bills, a court should not "impose an across-the-board penalty simply because a law firm has engaged in [this] generally accepted billing practice." Hnot, 2008 WL 1166309, at *6.

Here, though many of Plaintiff's attorneys' billing entries do feature block billing, there is no indication that the underlying hours billed were independently unreasonable, nor that entries were aggregated in order to obscure certain unreasonable charges. Plaintiff's entries are detailed and thorough, describing the specific time, date, and subject matter of each task, and often describing in detail the content and purpose of the task in relation to the litigation as a whole. The Court is similarly unpersuaded by the contention that Plaintiff spent excessive time on matters like communications and reading emails, as the detailed nature of the billing entries makes clear that all communications were necessary to resolution of this dispute, and the time spent appears commensurate with the work performed.

Finally, Plaintiff seeks to be compensated for the time it spent preparing the instant attorneys' fees application. It is established that "[i]n a proceeding to determine an award of attorney's fees, an attorney may include his fees for preparing the petition seeking litigation costs." In re Hudson, 364 B.R. at 881; see also Sidley Holding Corp. v. Ruderman, No. 08-CV-2513-WHP-MHD, 2009 WL 6047187, at *23 (S.D.N.Y. Dec. 30, 2009) (noting that a party may receive "reimbursement of fees incurred in the preparation of a fee request" when there is a contractual provision "obligating one party to reimburse the other for 'enforcement' of [the] contract"), report and recommendation adopted, No. 08-CV-2513-WHP, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010); LaSalle Bank, N.A. v. Capco Am. Securitization Corp., No. 02-CV-9916-RLC, 2006 WL 1227539, at *2 (S.D.N.Y. May 5, 2006) (holding that the plaintiff could

"recover fees for the hours spent pursuing its fee application" because the parties' agreement provided that "[the] costs of enforcement should be part of any damage award"). Because the Settlement Agreement here expressly provides that the prevailing party may recover "reasonable attorneys' fees" in connection with "any legal action between or among the Parties arising out of or in relation to this Agreement, or to enforce this Agreement," the time that Plaintiff spent preparing the instant attorneys' fees application is compensable. The Court further finds that the amount of hours Plaintiff expended on these tasks—4.2 hours for the Declaration in Support and 3.6 for the Reply—is reasonable.

Accordingly, as the Court has approved the number of hours requested by all attorneys, and approved all hourly rates requested, the final calculation of attorneys' fees is as follows:

| Legal Professional | Hours | Rate | Total Claim Amount |
| --- | --- | --- | --- |
| Mr. Raleigh | 51.2 | $525 | $26,880.00 |
| Mr. Ferrer | 9.1 | $525 | $4,777.50 |
| Ms. Mickey | 1.1 | $525 | $577.50 |
| Ms. Kaller | 1.4 | $265 | $371.00 |
| Mr. Scherling | 2.7 | $630 | $1,701.00 |
| Mr. Carroll | .2 | $815 | $163.00 |

**Final Total Award** = **$34,470.00**

CONCLUSION

For the foregoing reasons, Plaintiff is awarded $34,470.00 in attorneys' fees.

Defendants shall make payment no later than **November 1, 2021**.

SO ORDERED.

Dated: New York, New York
October 25, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge